Douglas J. Pick, Esq.
Eric C. Zabicki, Esq.
**PICK & ZABICKI LLP**
Counsel to 105 Management Corp.
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000

Hearing Date: February 26, 2019
Time: 10:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re:
TRIBECA FIT, INC.,

Chapter 11
Case No. 18-14214 (SHL)

Debtor.
----------------------------------------------------------x

### RESPONSE TO DEBTOR'S OBJECTION TO MOTION OF 105 MANAGEMENT CORPORATION FOR ENTRY OF AN ORDER VACATING THE AUTOMATIC STAY WITH REGARD TO NON-RESIDENTIAL REAL PROPERTY AND DIRECTING THE DEBTOR TO PAY POST-PETTITION RENT

1. 105 Management Corp (the "Landlord") submits this Response to the Debtor's Objection to the Landlord's request to vacate the Automatic Stay and to direct the Debtor to pay Post-Petition rent (the "Landlord's Motion"). The Debtor provides in opposition that:

> (i) The Debtor is holding $42,000 in escrow and that "it has sufficient cash flow to continue segregating Post-Petition rent every month." (*See* ¶7 to the Objection.)
>
> Response: The Debtor fails to disclose with whom the money is escrowed and fails to provide any affidavit from a person with knowledge as to its ability to also pay all other post-Petition debt obligations.[1] Also, the base rent is $35,399.94 per month and accordingly $70,799.88 should actually be in escrow. Notably, the Debtor simply fails to address how it will cure the unpaid rent obligations totaling $559,356.97 as of December 31, 2018 (the "Petition Date").

---

[1] The Debtor has not yet filed its initial monthly operating report for the period December 31, 2018 through January 31, 2019.

(ii) The Landlord is holding $29,740 representing the balance of the security deposit. (*See* ¶8 to the Objection.)

Response: In order to assume the Lease, the security deposit must not be less than $93,079.71. (*See* Page 2 to the Lease, a copy of which is attached as *Exhibit "A"* to the Declaration of John Lam to the Landlord's Motion.)

(iii) The Debtor refers this Court to *Elizabeth Broome Realty Corp. v. China Printing Co., Inc.*, 157 Misc.2d 572 (N.Y.C.Civ., N.Y. County 1993) and *Ying Lung Corporation v. Serina Medrano*, 475 N.Y.S.2d 772 (N.Y.C.Civ., N.Y. County 1984) for the legal argument that the Debtor is not obligated to pay rent unless and until a Certificate of Occupancy[2] related to the Premises is issued. (*See* ¶18 to the Objection.)

Response: This same legal argument has been raised by the Debtor in the Landlord/Tenant Court. (*See*: Debtor's Answer to Non-Payment Petition, undated, attached as *Exhibit "C"* to the Landlord's Motion). *455 Second Ave. LLC v. NY Sch. Of Dog Grooming, Inc.*, 37 Misc.3d 933 at 935 (N.Y.C.Civ., NY County 2012) addressed the Debtor's two (2) cited cases and held as follows:

> Respondent relies on two cases, *Yung Lung Corp. v Medrano*, 123 Misc 2d 1074 (Civ Ct, NY Cty 1984), and *Elizabeth Broome Realty Corp. v China Printing Co., Inc.*, 157 Misc.2d 572 (Civ Ct, NY County 1993), for the proposition that a commercial tenant may invoke Multiple Dwelling Law ("MDL") Section 302 as a defense for non-payment of rent.
>
> Section 302 (1) of the MDL provides: (a) If any dwelling or structure be occupied in whole or in part for human habitation in violation of section three hundred one, during such unlawful occupation . . . (b) No rent shall be recovered by the owner of such premises for said period, and no action or special proceeding shall be maintained therefor, or for possession of said premises for nonpayment of such rent.

---

[2] The Lease is dated October 1, 2017. Paragraph 7(f) thereof provides as follows:

Landlord agrees that it shall diligently pursue a valid Certificate of Occupancy for the Building from the New York City Department of Buildings to be in effect on or before April 30, 2018. Notwithstanding the foregoing, Landlord shall not be responsible for any delays beyond its control, including those due to any Tenant work at the Premises.

2

Section 301 of the MDL, referred to above in paragraph (a), requires the issuance of a C of O before a multiple dwelling may be "occupied in whole or in part".

In *Ying Lung Corp.*, focusing on the word "structure" and "human habitation" in MDL § 302(1), the court opined that "[t]he statutory language making the strong penalty for violation applicable to a "structure" (not just the residential units therein) if only a portion thereof is occupied for "human habitation", necessarily implies that nonresidential occupants are entitled to assert the defense provided in the section where the landlord fails to procure a certificate of occupancy" (*Ying Lung Corp.*, 123 Misc.2d at 1075). The court in *Elizabeth Broome Realty Corp.*, reasoned that MDL § 302(1) extended to commercial tenants because "the statute contains no words of limitation restricting its application to residential premises, or limiting the availability of this defense to residential tenants" (*Elizabeth Broome Realty Corp.*, 157 Misc2d at 574).

However, as appellate precedents have upheld landlords' right to collect rent in a summary proceedings against commercial tenants when a C of O is not in place (*see e.g., Phillips & Huyler Assoc. v Flynn*, 225 AD2d 475 [App Div 1st Dept, 1996] [use of premises in violation of C of O did not prevent landlord from collecting rent]; *Silver v Moe's Pizza*, 121 AD2d 376 [App Div 2d Dept,1986] [where landlord made no promise to get C of O on lease, the absence of a C of O did not relieve tenant from paying rent]; *Only Properties, LLC v Cavlak*, 30 Misc 3d 129(A), [App Term, 1st Dept, 2010] [nonconformity of the C of O and Department of Health violations did not relieve tenant's rent obligations even if alterations to premises was done by landlord on behest and behalf of tenant]; cf. *Chazon, LLC v Maugenest*, 19 NY3d 410 [2012] [the Court of Appeals recently made clear that M DL § 302(1)(b) bars special proceedings against residential tenant to recover rent or for possession of premises for nonpayment of rent]), a contrary conclusion is reached in this case.

Further, as MDL § 302 (1) is a derogation of common law, the definitions thereof must be strictly construed (*see Phillips & Huyler Assoc. v Flynn*, 225 AD2d 475). Therefore, it would be counter to the principals of strict construction to allow flexibility in applying the statute

3

other than as specified in the statute. Strict construction of the statute is facilitated by adhering to the definitions as provided by section 4 of the Multiple Dwelling Law. The pertinent relevant terms are as follow: "[a] dwelling' is any building or structure or portion thereof which is occupied in whole or in part as the home, residence or sleeping place of one or more human beings" (MDL § 4[4]); and a "structure" is "a building or construction of any kind" (MDL §4 [23]). As so defined, MDL § 302 evinces a limited application to residential tenants, tenants whose habitation or where they live, reside or sleep, are in a building or construction.

In concluding that MDL § 302 is inapplicable in this case, respondent's motion to dismiss the petition is denied.

2. In addition, the Debtor fails to address § 365(d)(3) of the Bankruptcy Code which provides that a lessee of nonresidential real property, "shall timely perform *all* the obligations" arising under the lease postpetition, so as to prevent the manifest injustice that would result were the debtor allowed to enjoy the use and occupancy of the premises, while concurrently denying the landlord its right to be compensated therefor. 11 U.S.C. § 365(d)(3) (emphasis added); *see In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 396-97 (Bankr. S.D.N.Y. 2001) (Gropper, J.)

Dated: New York, New York
February 21, 2019

PICK & ZABICKI LLP
Counsel to 105 Management Corp.

By: _____
Douglas J. Pick, Esq.
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000
